**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

**SECURITIES AND EXCHANGE**
**COMMISSION,**

                              **Plaintiff,**                              **19 Civ. 10562 (JPO)**

              **-against-**

**JERRY LI,**

                              **Defendant.**

## MEMORANDUM OF LAW IN SUPPORT OF
## <u>PLAINTIFF'S APPLICATION FOR DEFAULT JUDGMENT</u>

Jack Kaufman
Liora Sukhatme
Attorneys for Plaintiff
Securities and Exchange Commission
200 Vesey Street, Suite 400
New York, NY  10281-1022
(212) 336-0136 (Sukhatme)
SukhatmeL@sec.gov
Attorneys for Securities and Exchange Commission

September 27, 2021

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................. iii

PRELIMINARY STATEMENT ........................................................................................... 1

BACKGROUND ................................................................................................................... 1

   I.      Service of the Summons and Complaint on Li, and Li's Default ................................ 1

   II.     The Complaint ............................................................................................................ 2

      A.   Bribery of Chinese Government Officials ................................................................ 2

      B.   False Reimbursement Applications .......................................................................... 3

      C.   External Affairs Audit Reports ................................................................................ 4

ARGUMENT ......................................................................................................................... 5

   I.      Default Judgment Standard ......................................................................................... 5

   II.     Defendant Li is in Default ........................................................................................... 7

   III.    The Complaint Establishes Li's Liability ................................................................... 7

      A.   Li Violated Exchange Act Section 30A ................................................................... 7

      B.   Li Aided and Abetted Company A's Violations of Exchange Act Sections
          13(b)(2)(A) and 13(b)(2)(B) .................................................................................... 8

      C.   Li Violated Section 13(b)(5) of the Exchange Act and Rule 13b2-1 ...................... 10

   IV.    Requested Relief ......................................................................................................... 11

      A.   Permanent Injunctive Relief ................................................................................... 12

      B.   Civil Penalty ............................................................................................................ 12

CONCLUSION ..................................................................................................................... 16

## **TABLE OF AUTHORITIES**

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ............................................................................... 6

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ........................................................ 6

*Night Owl SP, LLC, v. Dongguan Auhua Electronics Co., Ltd.*, 19-cv-109-FtM-38-NPM, 2020
       WL 8768259 (M.D. Fla. Sept. 9, 2020) ..................................................................... 7

*SEC v. Apuzzo*, 689 F.3d 204 (2nd Cir. 2012) .................................................................... 9

*SEC v. Boock,* 2012 WL 3133638 (S.D.N.Y. Aug. 2, 2012) .............................................. 12

*SEC v. Cavanaugh*, 155 F.3d 129 (2d Cir. 1998) ........................................................ 12, 13

*SEC v. Colonial Inv. Mgmt. LLC*, 659 F. Supp. 2d 467 (S.D.N.Y. 2009) ......................... 13

*SEC v. Manor Nursing Ctrs., Inc.*, 458 F.2d 1082 (2d Cir.1972) ..................................... 12

*SEC v. McNulty*, 137 F.2d 732 (2nd Cir. 1998) ................................................................ 11

*SEC v. Rinfret*, 19-cv-6037 (AJN), 2020 WL 6559411 (S.D.N.Y. Nov. 9, 2020) .............. 5, 6, 14

*SEC v. Rio Tinto plc*, 2019 WL 1244933 (S.D.N.Y. March 18, 2019) ................................ 11

*SEC v. Skelley*, 18 Civ. 08803 (LGS), 2021 WL 1164594 (S.D.N.Y. March 26, 2021) ............... 6

*SEC v. Softpoint, Inc.*, 958 F. Supp. 846 (S.D.N.Y. 1997), aff'd, 159 F.3d 1348 (2d Cir. 1998)  11

*SEC v. Stanard,* 06-cv-7763-GEL, 2009 WL 196023 (S.D.N.Y. Jan. 27, 2009) ......................... 9

*SEC v. Straub*, 2016 WL 5793398 (S.D.N.Y. Sept. 30, 2016) ........................................... 11

*SEC v. Tourre*, 4 F.Supp. 3d 579 (S.D.N.Y. 2014) ........................................................... 14

*SEC v. World-Wide Coin Inv.*, 567 F. Supp. 724 (N.D. Ga. 1983) .................................... 9

*United States v. Wolfson*, 405 F.2d 779 (2d Cir. 1968) ..................................................... 8

*United States. v. Li*, 19-cr-760 (S.D.N.Y.) ......................................................................... 1


**Statutes**

15 U.S.C. § 78dd-l .............................................................................................................. 1

15 U.S.C. § 78u(d)(3) ......................................................................................................... 5

15 U.S.C. § 78u(d)(3)(B)(ii) ............................................................................................. 13

15 U.S.C. § 78u(e) ............................................................................................................ 12

15 U.S.C. §§78m(b) ............................................................................................................ 1

15 U.S.C. §78l ............................................................................................................ 7

15 U.S.C. §78m(b)(2)(A) ................................................................................. 7, 8, 9, 11, 13

15 U.S.C. §78m(b)(2)(B) ................................................................................... 7, 8, 9, 13

15 U.S.C. §78m(b)(5) ..................................................................................... 7, 10, 11, 13

15 U.S.C. §78t(e) ....................................................................................................... 8

15 U.S.C. §78u(d)(3) ................................................................................................... 1

17 C.F.R. §240.13b2-1 ................................................................................... 7, 10, 11, 13

28 U.S.C. § 2462 .................................................................................................. 13, 14

Federal Rule of Civil Procedure 12(a)(1) .......................................................................... 7

Federal Rule of Civil Procedure 12(a)(1)(A)(i) .................................................................... 2

Federal Rule of Civil Procedure 4(f)(1) ............................................................................ 1

Federal Rule of Civil Procedure 4(f)(1) ............................................................................ 7

Federal Rule of Civil Procedure 55(b)(2) .......................................................................... 1

## **Other Authorities**

Local Rule 55.2(b) ..................................................................................................... 1

SEC Release No. 33-10918 (January 8, 2021) ................................................................... 16

SEC Release No. 33-9387 (February 27, 2013) ................................................................. 16

## PRELIMINARY STATEMENT

Pursuant to Federal Rule of Civil Procedure 55(b)(2) and Local Rule 55.2(b), plaintiff Securities and Exchange Commission (the "SEC") respectfully submits this memorandum of law in support of its application for default judgment against Defendant Jerry Li ("Li" or "Defendant"), based on his failure to answer or otherwise respond to the SEC's Complaint.

The Complaint alleges that Li—the former managing director of a U.S. company's China subsidiaries—orchestrated a scheme to bribe Chinese government officials, in violation of Sections 13(b) and 30A of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§78m(b) and 78dd-l, and Rule 13b2-1 thereunder, 17 C.F.R. §240.13b2-1. Li has not responded to the Complaint, and the Commission therefore seeks a default judgment against him: (i) permanently enjoining Li from violating the above provisions; and (ii) ordering Li to pay a $550,092 civil penalty under Section 21(d)(3) of the Exchange Act, 15 U.S.C. §78u(d)(3).

## BACKGROUND

### I.      Service of the Summons and Complaint on Li, and Li's Default

The SEC filed its Complaint in this case on November 14, 2019.[1]  Pursuant to Rule 4(f)(1) of the Federal Rules of Civil Procedure, and the Hague Service Convention for Service Abroad of Judicial or Extrajudicial Documents in Civil or Commercial Matters ("Hague Service"), the SEC successfully caused Li to be served in China on December 24, 2020. (Declaration of Jack Kaufman, Ex. 1 hereto).  According to certificate of service papers received from China, Hague Service was completed on that date—as directed by the Shanghai High People's Court of China—by personal delivery (EMS courier) to Defendant's adult child at Defendant's residence in Shanghai, China.  *Id.*

---

[1]      The same day, the United States Department of Justice announced the unsealing of its related Indictment against Li.  *United States. v. Li*, 19-cr-760 (S.D.N.Y.)

Thus, pursuant to Fed.R.Civ.P. 12(a)(1)(A)(i), Defendant's Answer was due on or before January 14, 2021. However, as noted in the Clerk's Certificate of Default (DE 12), Defendant has neither answered nor otherwise responded to the Complaint and, thus, is in Default.

## II.   The Complaint

This section summarizes the Complaint's allegations against Li. From 2006 to 2016, Li was the Managing Director of a direct selling company in China ("China Subsidiary") comprised of wholly owned subsidiaries of a U.S.-based direct selling company ("Company A"). At all relevant times, Company A's stock was listed on the New York Stock Exchange and, thus, it was an "issuer" within the meaning of Exchange Act Section 30A—part of the Foreign Corrupt Practices Act ("FCPA"), 15 U.S.C. § 78dd-1. From 2006 to 2016, Li violated the FCPA by orchestrating a scheme to bribe Chinese government officials to obtain direct selling licenses for China Subsidiary and to curtail government investigations of China Subsidiary's business practices. *Complaint* ¶¶ 1-4, 11-13.

### A.   Bribery of Chinese Government Officials

Beginning in at least 2006, China Subsidiary's external affairs department ("External Affairs") was responsible for obtaining direct selling licenses from the Chinese government——a prerequisite for China Subsidiary to conduct its direct selling business in China. External Affairs was also responsible for promoting China Subsidiary's interests to the Chinese government, responding to inquiries and investigative requests from the Chinese government, and marketing China Subsidiary through the Chinese media. *Complaint* ¶ 18.

In 2006 and 2007, Li caused China Subsidiary to bribe Chinese government officials to facilitate their approval of China Subsidiary's application for its first direct selling license in China. *Complaint* ¶ 19. Li personally directed payment of the bribes to government officials employed by the China Ministry of Commerce (the agency responsible for awarding direct

2

selling licenses in China), and to local offices of the China State Administration for Industry and Commerce (another government agency that participated in the licensing process).  *Id.*  For example, in a January 10, 2007 recorded telephone call, Li asked the head of External Affairs ("China Employee 1") whether China Subsidiary had "taken care of" an official at the Ministry of Commerce ("Official 1").  Li then asked, "We have given the money to [Official 1], haven't we?" to which China Employee 1 replied, "Of course we have."  Li stated, "The money works well on him." *Id.*

While China Subsidiary's direct selling application was pending, Li also directed China Subsidiary's payment of bribes to Chinese government officials to stop government investigations of China Subsidiary, and to prevent or reduce Chinese government fines on China Subsidiary.  *Complaint* ¶¶ 20-21.  After China Subsidiary obtained its first direct selling license from the Chinese government, Li continued to cause China Subsidiary to bribe government officials to secure additional licenses, *Complaint* ¶ 22, and to prevent negative media coverage of China Subsidiary by state-owned media outlets in China.  *Complaint* ¶¶ 23-24.

### B.    False Reimbursement Applications

From at least 2006 to at least October 2016, Li knowingly approved false reimbursement applications for fictitious business expenses billed to China Subsidiary.  *Complaint* ¶ 25.  For example, in a December 30, 2006 recorded telephone call, Li discussed rewriting expense reports listing "red envelopes" which, Li understood, meant cash bribes to certain government officials. *Id.*

By way of further example, in 2015 and 2016, Li approved several expense applications that an External Affairs employee submitted for reimbursement of approximately $150,000 paid to a farm in Yantai, China, purportedly for shipments of fruits and vegetable gifts to government

officials. *Complaint* ¶ 28. The amount of produce purportedly purchased would have weighed approximately 34.5 metric tons—or 135 pounds per purported gift recipient—and, thus, could not have been the actual purpose of the $150,000 expenditure. *Id.* Li knew that these expense applications and the attached invoices were false and had been created for an illicit purpose. *Id.*

Company A consolidated China Subsidiary's financial statements into its publicly-reported financial statements, which Company A filed in the United States. Company A thus included in its reported financial statements the false expenses that Li had approved and facilitated. *Complaint* ¶ 29.

### C.      External Affairs Audit Reports

From 2012 to 2016, Li falsely assured China Subsidiary's Internal Audit employees ("IA") that certain large, illicit expenses were legitimate and necessary business expenses. *Complaint* ¶ 30. IA routinely audited External Affairs' expenses and issued a report at the conclusion of each audit ("EA Audit Report"). The EA Audit Reports showed unreasonably large expenses and listed violations of China Subsidiary's policies, including fake receipts and verbal approval of expenses. *Complaint* ¶ 31. Li falsely assured IA that the abnormally high EA expenses were legitimate, and that he would discipline and train employees to improve compliance of China Subsidiary's policies. *Complaint* ¶ 34.

For example, in April 2016, Li received an EA Audit Report showing implausibly large expenditures by China Employee 1 on meals with Government officials (115 meals, averaging $1,472 per meal over a single six-month period), problematic receipts, and Employee 1's reliance on verbal approvals for expenses, in violation China Subsidiary's internal policies. *Complaint* ¶ 33. Li falsely assured IA that the abnormally high EA expenses were necessary, and that he was committed to improving compliance with China Subsidiary's policies. IA

purported to rely on Li's false assurances in sending the EA Audit Report (including Li's assurances) to Company A's management and its Board of Directors, and in responding to the Board of Director's subsequent inquiries regarding the high EA spending.  *Complaint* ¶ 34.

For each quarter from 2008 to 2016, as China Subsidiary's Managing Director, Li signed an internal certification related to Company A's filings.  *Complaint* ¶ 35.   In each instance, Li falsely certified that:  (i) he had designed disclosure controls and procedures to ensure that material information relating to his area of responsibility was made known to the CEO and CFO; (ii) nothing came to his attention that made him question the effectiveness of Company A's disclosure controls and procedures; and (iii) he was not aware of any significant deficiencies or material weaknesses in Company A's internal controls, or any fraud, material or not.  *Complaint* ¶ 35.  Based on the facts summarized above—showing Li's concealment of bribery, approval of false expenses, and circumvention of internal accounting controls—these certifications were false. *Id.*

## ARGUMENT

For the following reasons, the Court should enter a default judgment against Defendant Li enjoining him from future securities laws violations and ordering him to pay a $550,092 civil penalty pursuant to Section 21(d)(3) of the Exchange Act, 15 U.S.C. § 78u(d)(3).

## I.   Default Judgment Standard

"Federal Rule of Civil Procedure 55 sets out a two-step procedure to be followed for the entry of judgment against a party who fails to defend: the entry of a default, and the entry of a default judgment."  *SEC v. Rinfret*, 19-cv-6037 (AJN), 2020 WL 6559411, at *2 (S.D.N.Y. Nov. 9, 2020).  "The first step, entry of a default, simply formalizes a judicial recognition that a defendant has, through its failure to defend the action, admitted liability to the plaintiff."  *Id.* "The second step, entry of a default judgment, converts the defendant's admission of liability

into a final judgment that terminates the litigation and awards the plaintiff any relief to which the court decides it is entitled, to the extent permitted by the pleadings." *Id.* (internal quotation marks and citations omitted).

"Whether entry of default judgment at the second step is appropriate depends upon whether the allegations against the defaulting party are well-pleaded." *Id.*, at *3. Once a party is in default, a district court must accept as true all of the factual allegations of the non-defaulting party and draw all reasonable inferences in its favor." *Id.* (internal quotation marks and citations omitted). "But because a party in default does not admit conclusions of law, the Court must determine whether the plaintiff's allegations are sufficient to establish the defendant's liability as a matter of law." *Id.* Accordingly, to determine the "legal sufficiency" of the SEC's claims, the Court is to apply the "plausibility standard enunciated in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), aided by the additional step of drawing inferences in the [SEC's] favor." *Id.*

The SEC seeks two forms of relief against Li—an injunction against future violations of the charged securities laws and a civil money penalty. To determine whether such relief is appropriate as part of an SEC motion for default judgment—absent any counter-evidence proffered by Defendant—Courts in this District likewise accept as true all of the Complaint's well-pleaded fact allegations, and also take into consideration any additional evidence the SEC might proffer in support of its requested relief. *See id.* at *7; *SEC v. Skelley*, 18-cv-08803 (LGS) (DF), 2021 WL 863298, at *8-9 (S.D.N.Y. Feb. 25, 2021) (Magistrate Judge Report and Recommendation, adopted by District Court Judge on March 26, 2021, *SEC v. Skelley*, 18 Civ. 08803 (LGS), 2021 WL 1164594 (S.D.N.Y. March 26, 2021)).

## II.   Defendant Li is in Default

As detailed above, the SEC properly effectuated service on Li of the Complaint and a summons under Federal Rule of Civil Procedure 4(f)(1).  Rule 4(f)(1) permits service on an individual outside the United States "by any internationally agreed means of service that is reasonably calculated to give notice, such as [Hague Service]."  Fed. R. Civ. P. 4(f)(1).  Hague Service is an appropriate means of service in this case because China and the United States are members of the Hague Service Convention.  *See Night Owl SP, LLC, v. Dongguan Auhua Electronics Co., Ltd.*, 19-cv-109-FtM-38-NPM, 2020 WL 8768259, *1 (M.D. Fla. Sept. 9, 2020). The SEC successfully caused Li to be served in China by Hague Service on December 24, 2020. (Ex.1.)  Furthermore, as the Clerk of Court has certified, Li has not answered or otherwise responded to the Complaint within the time limit established by Federal Rule of Civil Procedure 12(a)(1).  Thus, Li is now in default.  *See* Fed. R. Civ. P. 55(a).

## III.   The Complaint Establishes Li's Liability

The Complaint's well-pled allegations, outlined above, demonstrate that Li violated Exchange Act Sections 13(b)(5) and Section 30A (and Rule 13b2-1 thereunder), and aided and abetted Company A's violations of Exchange Act Sections 13(b)(2)(A) and 13(b)(2)(B), by orchestrating a scheme to bribe foreign government officials.  Through his participation in this corrupt scheme, Li knowingly circumvented Company A's internal accounting controls and knowingly falsified Company A's books, records, and accounts.

### A.   Li Violated Exchange Act Section 30A

The FCPA's anti-bribery provision, Exchange Act Section 30A, makes it unlawful for any "officer, director, employee, or agent" of an issuer with securities registered under Exchange Act Section 12 "to make use of the mails or any means or instrumentality of interstate commerce corruptly in furtherance of an offer, payment, promise to pay, or authorization of the payment of

7

any money, or offer, gift, promise to give, or authorization of the giving of anything of value to any foreign official for purposes of" influencing their official decision-making or "securing any improper advantage" in order to assist the issuer "in obtaining or retaining business."  15 U.S.C. § 78dd-1(a)(1).  For purposes of this provision, a defendant "make[s] use of the mails or instrumentality of interstate commerce" if he "act[s] with knowledge that the use of the mails will follow in the ordinary course of business, or where such use can reasonably be foreseen, even though not actually intended."  *United States v. Wolfson*, 405 F.2d 779 (2d Cir. 1968) (internal quotation marks omitted).

Li, while acting as an officer, employee, or agent of Company A, *Complaint* ¶¶ 11, 38, violated Section 30A by bribing government officials to obtain licenses and stop government investigations, *Complaint* ¶¶ 19-22, and by bribing Chinese state-owned media to prevent negative media coverage of China Subsidiary, *Complaint* ¶¶ 23-24.  Li made use of "any means or instrumentalities of interstate commerce" by, among other things, communicating telephonically and via email with officers and employees of Company A in the United States regarding approvals for entertaining Chinese government and media officials, which Li used to bribe the officials.  *Complaint* ¶ 10.  Li also emailed false internal certifications to Company A management in connection with Company A's Commission filings in the United States. *Complaint* ¶¶ 10, 35.

### B.    Li Aided and Abetted Company A's Violations of Exchange Act Sections 13(b)(2)(A) and 13(b)(2)(B)

Section 20(e) of the Exchange Act provides that "any person that knowingly or recklessly provides substantial assistance to another person in violation of a provision of" that act "shall be deemed to be in violation of such provision.  15 U.S.C. §78t(e).  To establish that Li aided and abetted violations of Exchange Act Sections 13(b)(2)(A) and 13(b)(2)(B), the Commission must

establish that : (1) Company A violated Exchange Act Sections 13(b)(2)(A) and 13(b)(2)(B); (2) Li knew of or recklessly disregarded those violations; and (3) Li substantially assisted in the achievement of those violations. *See SEC v. Apuzzo*, 689 F.3d 204 (2nd Cir. 2012). The Complaint's allegations establish each of these elements.

Exchange Act Section 13(b)(2)(A) requires issuers (such as Company A) to "make and keep books, records, and accounts which, in reasonable detail, accurately and fairly reflect the transactions and dispositions of the assets of the issuers." 15 U.S.C. §78m(b)(2)(A). Section 13(b)(2)(B) of the Exchange Act requires issuers to "devise and maintain a system of internal accounting controls sufficient to provide reasonable assurances that: (i) transactions are executed in accordance with management's general or specific authorization; (ii) transactions are recorded as necessary [] to permit preparation of financial statements in conformity with generally accepted accounting principles…and to maintain accountability of assets;" and "(iii) access to assets is permitted only in accordance with management's general or specific authorization." 15 U.S.C. §78m(b)(2)(B). Violations of Exchange Act Sections 13(b)(2)(A) and 13(b)(2)(B) do not require a showing of scienter, materiality, or that transactions are above specific dollar amount. *See SEC v. Stanard,* 06-cv-7763-GEL, 2009 WL 196023, *31 (S.D.N.Y. Jan. 27, 2009); *SEC v. World-Wide Coin Inv.*, 567 F. Supp. 724, at 749-52 (N.D. Ga. 1983).

Company A violated Exchange Act Sections 13(b)(2)(A) and 13(b)(2)(B). As a result of Li's participation in the bribery scheme described above—which included mischaracterizing as legitimate expenses payments for gifts, cash, travel, and entertainment to government and media officials—Company A's books and records did not accurately and fairly reflect its transactions and dispositions of its assets. *Complaint* ¶¶25-29. Furthermore, Company A's system of internal accounting controls was inadequate to provide reasonable assurances of the prevention

of improper payments by China Subsidiary.  Li falsely assured IA that certain abnormally high, illicit External Affairs expenses were legitimate and necessary business expenses, and Company A's system of internal accounting controls was inadequate to prevent the company from falsely recording as legitimate those illegitimate expenses.  *Complaint ¶¶ 30-34.*

Li substantially assisted Company A and acted with scienter.  Li knowingly or recklessly approved expenses that inaccurately reflected the purported transactions, causing Company to record the expenses inaccurately in its financial statements.  For example, Li approved expenses for "red envelopes" and cash payments given to government officials.  *Complaint ¶ 25.*  In 2015-2016, Li approved the reimbursement of approximately $150,000, purportedly for fruit and vegetables purchased from a Yantai farm knowing that the expense applications and attached invoices were false and had been created for an illicit purpose.  *Complaint ¶ 28.*

As described above, Li knowingly or recklessly caused Company A to fail to provide reasonable assurances that its expenses were executed in accordance with management's authorization and/or recorded appropriately.  IA found numerous and recurring failures of internal accounting controls, and it submitted to Li reports outlining those failures.  *Complaint ¶¶ 31-34.*  In response, Li falsely assured IA that he would discipline and train employees to correct the policy violations that IA had identified.  Instead, Li continued to approve expenses that, he knew, violated Company A's policies.  *Complaint ¶ 34.*

C.     **Li Violated Section 13(b)(5) of the Exchange Act and Rule 13b2-1**

Exchange Act Section 13(b)(5) provides that "[n]o person shall knowingly circumvent or knowingly fail to implement a system of internal accounting controls or knowingly falsify any book, record, or account" of any issuer required to file reports.  15 U.S.C. §78m(b)(5).  Exchange Act Rule 13b2-1 provides that "no person shall directly or indirectly, falsify or cause to be

falsified, any book, record, or account" subject to Exchange Act Section 13(b)(2)(A). 17 C.F.R. §240.13b2-1. Scienter is not an element of a Rule 13b2-1 violation, *see SEC v. McNulty*, 137 F.2d 732, 740-41 (2nd Cir. 1998), although some courts have held that "the SEC must demonstrate that a defendant knew of facts that contradicted the substance of the reported accounting." *SEC v. Rio Tinto plc*, 2019 WL 1244933, at *20 (S.D.N.Y. March 18, 2019) (quoting *SEC v. Straub*, 2016 WL 5793398, at *21 (S.D.N.Y. Sept. 30, 2016)); *see also SEC v. Softpoint, Inc.*, 958 F. Supp. 846, 866 (S.D.N.Y. 1997), aff'd, 159 F.3d 1348 (2d Cir. 1998) ("There is no scienter requirement; liability is predicated on 'standards of reasonableness'" (citation omitted)).

 As described above, Li violated Section 13(b)(5) and Rule 13b2-1 by knowingly falsifying Company A's books, records, and accounts, and by circumventing Company A's system of internal accounting controls. Li approved expenses knowing that they did not accurately reflect the reported transactions or disposition of company assets. *Complaint* ¶¶ 25-28. Li circumvented Company A's accounting controls by falsely assuring IA that certain illicit External Affairs expenses were legitimate and necessary business expenses, and by failing to implement the accounting controls in the IA reports. *Complaint* ¶ 30-34. As a result of Li's conduct, Company A's books and records falsely recorded the corrupt payments for bribes to Chinese government officials (described above) as bona fide business expenses. *Complaint* ¶ 29. By authorizing false invoices and expense applications, Li knowingly circumvented Company A's internal accounting controls.

## IV.    <u>Requested Relief</u>

 For the following reasons, the SEC is entitled to a final judgment against Li: (1) permanently enjoining him from future securities laws violations; and (2) ordering him to pay a $550,092 civil penalty.

### A.    <u>Permanent Injunctive Relief</u>

Exchange Act Section 21(e) authorizes federal courts to issue "injunctions … and orders commanding … any person to comply with the provisions of this title [or] the rules, regulations, and orders thereunder." 15 U.S.C. § 78u(e)  "The critical question for a district court in deciding whether to issue a permanent injunction in view of past violations is whether there is a reasonable likelihood that the wrong will be repeated."  *SEC v. Manor Nursing Ctrs., Inc.*, 458 F.2d 1082, 1100 (2d Cir.1972).  In determining whether a reasonable likelihood of recurrent violations exists, courts generally consider: (1) the egregiousness of the conduct; (2) the isolated or recurrent nature of the infraction; (3) the degree of scienter involved; (4) the sincerity of the defendant's assurance against future violations; and (5) the defendant's recognition of the wrongful nature of his conduct.  *See SEC v. Cavanaugh*, 155 F.3d 129, 135 (2d Cir. 1998).

In this case, the above factors weigh heavily in favor of permanently enjoining Li from committing future violations of the charged federal securities laws.  As alleged in the Complaint, Li orchestrated a long-running scheme to bribe Chinese government officials, falsify expense reports for those bribes, and circumvent Company A's internal accounting controls to conceal the bribes.  Li has not acknowledged his misconduct and has provided no assurance that he will refrain from any such future misconduct.  Thus, the issuance of permanent injunctions against future securities law violations is warranted against Li.

### B.    <u>Civil Penalty</u>

The Exchange Act authorizes the Court to impose civil monetary penalties for violations of the securities laws.  *SEC v. Boock,* 2012 WL 3133638, *6 (S.D.N.Y. Aug. 2, 2012).  A monetary penalty is designed to serve as a deterrent against securities law violations, and courts

have broad discretion to determine the appropriate amount of any penalty in light of the facts and circumstances surrounding a defendant's role in the violation. *Id.*

With respect to his violations of Exchange Act Sections 13(b)(2)(A), 13(b)(2)(B), and 13(b)(5), and Exchange Act Rule 13b2-1, Li qualifies for second-tier penalties pursuant to Exchange Act Section 21(d)(3)(B)(ii).[2]  Under that provision, "the amount of the penalty for each such violation shall not exceed ... [$80,000-$97,523][3] for a natural person ... [or] the gross amount of pecuniary gain ... if the violation ... involved fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement." 15 U.S.C. § 78u(d)(3)(B)(ii).  As set forth in the Complaint, Li's involvement in this extensive corruption scheme amounted to a deliberate or reckless disregard of regulatory requirements.

In assessing the appropriate penalty amount, district courts in this Circuit look to several factors, which largely overlap with the factors considered for imposition of a permanent injunction: (1) the egregiousness of the defendant's conduct; (2) the degree of the defendant's scienter; (3) whether the defendant's conduct created substantial losses or the risk of substantial losses to other persons; (4) whether the defendant's conduct was isolated or recurrent; (5) whether the defendant has admitted wrongdoing; and (6) whether the penalty should be reduced due to the defendant's demonstrated current and future financial condition. *SEC v. Colonial Inv. Mgmt. LLC*, 659 F. Supp. 2d 467, 503 (S.D.N.Y. 2009).  In the default judgment

---

[2]     The SEC does not seek penalties for Li's Exchange Act Section 30A bribery violations, which occurred outside the five-year limitations period for civil monetary penalties.  28 U.S.C. § 2462.

[3]     During the relevant time period, the statutory Tier 2 penalty for an individual ranged from $80,000 to $97,523 per violation.  *See* Adjustments to Civil Monetary Penalty Amounts, SEC Release No. 33-9387 (February 27, 2013) and SEC Release No. 33-10918 (January 8, 2021), also available at https://www.sec.gov/enforce/civil-penalties-inflation-adjustments.htm.

context, courts have assessed these factors based on the Complaint's allegations, particularly where, as here, the SEC is not requesting a penalty based on the amount of pecuniary gain to the defendant. *See, e.g., Rinfret*, 2020 WL 6559411, at *7 (assessing the penalty factors based on the well-pleaded allegations in the Commission's Complaint).

Here, the Complaint's allegations show that Li knowingly and intentionally engaged in a long-running bribery scheme, including lying to Company A executives, falsifying records, and circumventing internal accounting controls. The extensive nature of his corrupt activity, and his refusal to admit wrongdoing warrant the imposition of a strong penalty. As further explained below, the SEC respectfully submits that a $550,092 civil penalty would be commensurate with both the extensive and egregious nature of Li's violations.

For the purpose of calculating an appropriate civil penalty, the Court has discretion to determine the number of violations that Li committed. *See SEC v. Tourre*, 4 F.Supp. 3d 579 (S.D.N.Y. 2014). The SEC submits that, in making this determination, the Court should consider the following Complaint allegations, which exemplify Li's individual violations in falsifying Company A records and circumventing Company A's internal accounting controls during the statutory period:[4]

> (i)   in 2015 and 2016, Li approved several expense applications for reimbursement of approximately $150,000 paid to a farm in Yantai, while knowing that these expense applications were false and had been created for an illicit purpose, *Complaint* ¶ 28;
>
> (ii)  in April 2016, Li received an EA Audit Report listing implausible expenses, excessive spending, and violations of internal controls, but nonetheless falsely assured IA that the EA expenses were legitimate, *Complaint* ¶¶ 33-34;
>
> (iii) for each quarter from 2014 to 2016, Li signed false internal certifications for Company A's public SEC filings, *Complaint* ¶ 35; and

---

[4]   The below list does not include violations that occurred outside of the five-year limitations period. 28 U.S.C. § 2462.

(iv)    on October 20-21, 2016, in investigative testimony before the Commission staff—and in the presence of Company A's officer responsible for FCPA compliance—Li falsely testified that he had no knowledge of any payments to Chinese government officials on behalf of China Subsidiary, thus further acting to circumvent Company A's internal accounting controls, *Complaint* ¶ 36.

Li's actions detailed above may have included multiple false records that violated multiple statutory provisions.  However, for purposes of calculating an appropriate civil money penalty for Li, the SEC proposes that the Court treat acts (i), (ii), and (iv) above each as a single violation (for a total of three violations).  For act (iii) above, the SEC proposes that the Court count each of Li's three false annual certifications as a single violation (for a total of three additional violations), rather than counting each interim, quarterly certification that Li signed as a separate violation.  Applying  the statutory Tier 2 penalty for individuals which ranged from $80,000 to $97,523 per violation during the relevant time period—the SEC requests that the Court impose a total penalty of $550,092 for the violations described above, which can be broken down as follows:

| Complaint Paragraphs | Violation | Penalty |
|---|---|---|
| 28 | False Yantai farm expenses | $80,000 |
| 33-34 | False April 2016 EA Audit Report | $97,523 |
| 35 | 2014 false certification | $80,000 |
| 35 | 2015 false certification | $97,523 |
| 35 | 2016 false certification | $97,523 |
| 36 | False SEC testimony | $97,523 |
| | TOTAL: | **$550,092** |

## <u>CONCLUSION</u>

For the foregoing reasons, the SEC respectfully requests that the Court grant its motion for default judgment against defendant Jerry Li.

Dated:  September 27, 2021
       New York, New York

                                */s/ Liora Sukhatme*
                                Jack Kaufman
                                Liora Sukhatme
                                Attorneys for Plaintiff
                                Securities and Exchange Commission
                                200 Vesey Street, Suite 400
                                New York, NY  10281-1022
                                (212) 336-0136 (Sukhatme)
                                SukhatmeL@sec.gov